UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MICHAEL JAY,

                                        Plaintiff,

     -v-                                                    5:15-CV-1066

GLOBAL FOUNDRIES U.S. INC.,

                                        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                              OF COUNSEL:

HARRIS, CONWAY & DONOVAN, PLLC           MICHAEL C. CONWAY, ESQ.
Attorneys for Plaintiff                   RYAN E. MANLEY, ESQ.
The Patroon Building
5 Clinton Square
Albany, NY 12207

NAPIERSKI, VANDENBURGH, NAPIERSKI        EUGENE D. NAPIERSKI, ESQ.
    & O'CONNOR, LLP                       KONSTANDINOS D. LERIS, ESQ.
Attorneys for Defendant
296 Washington Avenue Extension
Albany, NY 12203

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

        Plaintiff Michael Jay ("plaintiff" or "Jay") filed this diversity action seeking

compensatory damages for injuries he sustained on March 10, 2014, on defendant Global

Foundries U.S. Inc.'s ("defendant" or "Global Foundries") construction site.  Plaintiff asserts

the following four claims:  (1) common law negligence; (2) violation of New York Labor Law

§ 240; (3) violation of New York Labor Law § 241; and (4) violation of New York Labor Law § 200.

Defendant has now moved for summary judgment under Federal Rule of Civil Procedure 56 to dismiss the complaint in its entirety. Plaintiff opposed the motion only as to the § 240 claim and cross-moved for summary judgment on liability as to the § 240 claim. Defendant opposed the cross-motion and replied in support of its own. Oral argument was heard on November 3, 2017, in Utica, New York. Decision was reserved.

## II. **BACKGROUND**

The following facts are drawn from the parties' statements of material facts and are undisputed unless otherwise noted. The parties largely agree on how plaintiff's injury occurred but dispute the characterization of the activity and whether the construction material became airborne.

During the relevant time period, defendant hired Turner Construction Company as construction manager for a construction project at defendant's Malta, New York site. Turner Construction Company in turn hired J.W. Danforth as a trade contractor for sheet metal and piping work. Plaintiff was employed by J.W. Danforth as a foreman for material handling. He was responsible for ensuring that materials to be installed were readily available to the crews assigned. He reported to a J.W. Danforth supervisor named Jerry.

On March 20, 2014, Jay was working on the job site. At 2:00 p.m., Jerry called and advised plaintiff that he needed to escort a truck owned by another firm, Tougher, off the site because that driver did not have security clearance and also because the driver needed to get back to his own office, approximately 30 minutes away, by 3:00 p.m. Plaintiff told Jerry that his assistant had already left for the day and he first needed to finish unloading his own

truck before he could escort the driver.  According to Jay, the Tougher driver was caught in a

large on site traffic jam at the time.  Plaintiff then called Tom Sweeney, J.W. Danforth's lull

operator,[1] who was operating a lull approximately 20 to 25 minutes away from plaintiff's

location.

      While plaintiff was unloading his truck, he received another call from Jerry regarding

the Tougher truck.  Jay then proceeded to the location of the Tougher truck to escort it off

site.  When he arrived to the Tougher truck, it was being unloaded by a lull.  After asking the

lull operator to move out of the way, Jay began escorting the truck out of the congested area.

While doing so, he received another call from Jerry advising that before the Tougher truck

left the site, several pieces of duct which needed to be modified, and were elsewhere on the

site, should be put on the Tougher truck and brought back to the Tougher site.

      According to Jay, Jerry did not direct him to utilize a lull for this task and one was not

available where the task needed to take place.  Moreover, plaintiff did not have the authority

to direct any lull operator on site to disengage from their activities and come to the location of

this task.  Defendant disputes that a lull was not available for the task and contends there

were at least two on site according to Jay himself; one unloading the Tougher truck when he

arrived to its location and the second being operated by Sweeney at a location 20 to 25

minutes away.

      The two pieces of duct to be loaded in the Tougher truck were both 62 inches in

diameter; one was six feet long and weighed 550 pounds and the other five feet long and

weighed 450 pounds.  The ducts initially stood vertically like smokestacks.  The parties both

---

[1]  A "lull" is a term used for a heavy-duty forklift type of equipment with telescoping boom that can extend both outwards and upwards.

acknowledge that the usual procedure for loading and unloading materials of this nature is to use a lull or other mechanical lift.

Plaintiff claims that given his time constraint to load the ducts and get the Tougher truck off site and back to its location by 3:00 p.m., coupled with the fact that the lull on site operated by Sweeney would have taken at least 20 to 25 minutes to arrive, he decided to proceed with loading the ducts manually, without a lull, and with the help of four to five other workers. One of the workers asked Jay if he wanted to use the lull to assist with the loading process, but Jay declined. Plaintiff testified that in addition to time constraints, he decided not to use the lull because there were plenty of workers there to load the material without using the lull and because he has loaded ducts thousands of times and most the time did not use a lull. However, he testified that he is fully aware that the better way to have loaded the ducts was with a lull or other heavy lifting device.

Jay decided how the ducts would be loaded; the workers started with the larger piece first. The crew remained on the ground to load the larger piece onto the truck bed first. According to plaintiff, they leaned the vertical duct against the bed of the truck and began tilting it so that the perimeter edge (in the middle) was in contact with the rear edge of the tailgate. The workers then picked up the lower end to throw it in the air so it would rotate 180 degrees in the air with the opposite end of the duct from the one that was originally on the ground, now at the top. The first duct landed in the truck bed.

Plaintiff decided the second and smaller piece of duct would be loaded the same way, except that he climbed into the truck bed so he could make sure the flange of the second piece did not hit the piece already in the truck bed. The crew, still on the ground, lifted the lower end of the duct in the same manner, using their energy to lift the piece off the ground

and propel it vertically.  Plaintiff contends they threw it upwards in order to rotate it the 180 degrees to stand on the truck bed.  As the duct was being rotated or spun in the air, the bottom perimeter edge came at least a foot off of the tailgate and bed of the truck.  As it was in the air and rotating, plaintiff tried to grab the upper part of the duct but got caught between the two pieces, and was struck in the foot by the lower flange coming down.  He also contends that, due to the nature of the hand hoisting and flipping maneuver, and his efforts to avoid damaging the duct, the part of the duct that hit his foot had been hoisted up several feet above the elevated truck bed before the crew flipped the duct in the air.

Defendant disputes plaintiff's characterization of the activity as hoisting and/or hand hoisting and denies that the perimeter came at least one foot off the bed of the truck. Defendant also denies that the flange had been several feet off the elevated truck bed before it hit Jay's foot.

The parties have both retained experts to provide opinions on the incident and have submitted those expert opinions in conjunction with the instant motions.  However, defendant's expert opinion is unsigned and unverified, and defendant has failed to proffer an affidavit from its expert.  As a court on summary judgment must properly consider only evidence that would be admissible at trial, defendant's unsworn expert report will not be considered.

With respect to plaintiff's expert, Joseph C. Cannizzo, Professional Engineer, he opined that heavy lifting equipment or a lull should have been provided to plaintiff to utilize in hoisting the heavy duct.  He proffered that a lull would have prevented the duct from free-falling down upon Jay's foot.  Instead, the make-shift, unsafe, fulcrum and hoist device used to hoist the duct above the truck bed and rotate it 180 degrees resulted in an impact force,

which was a function of both the duct's weight and the fall height being exerted on plaintiff's foot. According to Cannizzo, even though the flange that hit Jay's foot only free fell from several feet above the elevated truck bed, the weight of the duct and the way that it was manually hoisted up and then flipped and dropped resulted in a significant force falling upon his foot. He also opined that the workers had to use sufficient force to raise the entire duct above the truck gate and onto the bed; the upward force applied by the workers was necessary to propel the duct upward and vertically rotate it in order not to damage the top flange. He concluded that the duct fell from its elevated position from the force of gravity.

## III. **LEGAL STANDARD**

The entry of summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).

A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248; see also Jeffreys v. City of N.Y., 426 F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

When summary judgment is sought, the moving party bears the initial burden of demonstrating that there is no genuine issue of material fact to be decided with respect to any essential element of the claim. Anderson, 477 U.S. at 250 n.4. The failure to meet this burden warrants denial of the motion. Id. In the event this initial burden is met, the opposing

party must show, through affidavits or otherwise, that there is a material issue of fact for trial. Id. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the nonmoving party. Jeffreys, 426 F.3d at 553. Accordingly, summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002); see also Anderson, 477 U.S. at 250 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

When considering cross-motions for summary judgment, a court "must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." Hotel Employees & Rest. Employees Union, Local 100 of N.Y. v. City of N.Y. Dep't of Parks & Recreation, 311 F.3d 534, 543 (2d Cir. 2002) (internal quotations omitted). "[N]either side is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law, against it . . . [and] a district court is not required to grant judgment as a matter of law for one side or the other." Heublein, Inc. v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993). Cross-motions for summary judgment do not alter the basic standard, but simply require the court to determine whether either of the parties deserve judgment as a matter of law on facts that are not in dispute.

## IV. DISCUSSION

Plaintiff has not opposed defendant's request for summary judgment dismissing the N.Y. Labor Law §§ 200 and 241 claims nor the negligence claim. On an unopposed motion,

a court must still determine that the moving party has met its burden to demonstrate

entitlement to the relief requested therein.  After considering the submissions, defendant has

shown it is entitled to judgment as a matter of law on the § 200, § 241, and negligence claims

and those will be dismissed.

As to the contested § 240 claim, defendant argues it is entitled to judgment as a

matter of law because even construing the facts in the light most favorable to plaintiff, the

activity is not the type covered by the statute.  By contrast, plaintiff argues he is entitled to

judgment as a matter of law on liability because even construing the facts in the light most

favorable to defendant, the activity is the type protected by the statute.  Alternatively, plaintiff

contends factual disputes preclude a grant of summary judgment.

N.Y. Labor Law § 240(1), generally known as the Scaffold Law, provides in relevant

part:

> All contractors and owners and their agents . . . shall furnish or
> erect, or cause to be furnished or erected for the performance of
> such labor, scaffolding, hoists, stays, ladders, slings, hangers,
> blocks, pulleys, braces, irons, ropes, and other devices which
> shall be so constructed, placed and operated as to give proper
> protection to a person so employed.

Simply stated, the section generally covers falling workers and falling objects.

The section imposes absolute liability upon owners of a construction site if they fail to

provide adequate safety devices to workers to protect them from elevation related hazards.

Rivera v. Home Depot U.S.A. Inc., No. 16-CV-7552, 2018 WL 1146436, at *1 (S.D.N.Y. Feb.

28, 2018) ("The core premise of § 240(1) is that a defendant's failure to provide workers with

adequate protection from reasonably preventable, gravity-related accidents will result in

liability.") (citing Wilinski v. 334 E. 92nd Hous. Dev. Fund Corp., 18 N.Y.3d 1, 7 (2011)); see

also <u>Diaz v. Globalfoundries U.S., Inc.</u>, 616 F. App'x 450, 451-52 (2d Cir. 2015) (summary order) ("New York limits liability under section § 240(1) to accidents related to the inherent effects of gravity, <u>Runner v. N.Y. Stock Ech., Inc.</u>, 568 F.3d 383, 386 (2d Cir. 2009), where protective devices are called for either because of a difference between the elevation level of the required work and a lower level or a difference between the elevation level where the worker is positioned and the higher level of the materials or load being hoisted or secured.") (internal quotations omitted).

To prevail on a § 240(1) claim, plaintiff must demonstrate (1) that defendant failed to adequately secure an elevated worksite within the meaning of the statute, and (2) that failure proximately caused some injury. <u>Diaz</u>, 616 F. App'x at 452. The law is well settled that § 240(1) only applies in limited circumstances and was intended to apply where there are risks related to elevation differentials and risks that are special hazards. The New York State Court of Appeals has cautioned that

> Not every worker who falls at a construction site . . . gives rise to the extraordinary protections of Labor Law § 240(1). Rather, liability is contingent upon the existence of a hazard contemplated in section 240(1) and the failure to use, or the inadequacy of, a safety device of the kind enumerated therein.

<u>Narducci v. Manhasset Bay Assocs.</u>, 96 N.Y.2d 259, 267 (2001).

Thus, it is insufficient that the injury resulted from an "elevation differential"; it must also be established that "the proper erection, construction, placement or operation of one or more devices of the sort listed in section 240(1) would allegedly have prevented the injury." <u>Rocovich v. Consol. Edison Co.</u>, 78 N.Y.2d 509, 514 (1991) (internal quotations omitted). After <u>Runner</u>, "the single decisive question is whether plaintiff's injuries were the direct

consequence of a failure to provide adequate protection against a risk arising from a physically significant elevation differential." Diaz, 616 F. App'x at 452.

It is undisputed that on March 10, 2014, after successfully loading a 550 pound piece of duct, plaintiff and his coworkers began to load a second, 450 pound piece.  They first leaned it against the tailgate of the truck.  Next, they picked the lower end of the duct off the ground, creating what plaintiff's expert explained as a fulcrum[2] with the bed of the truck in order to throw the duct in the air to get it onto the bed of the truck.  Under Jay's version of the events, the workers threw the piece approximately one foot above the truck bed in order to flip it onto the bed.  He was then injured when the 450 pound piece of duct fell back down to the bed of the truck after it was thrown in the air by his coworkers.  In order to rotate the piece onto the truck bed, the crewmen were required to lift the portion that was on the ground and propel it upwards by utilizing their energy to overcome the force of gravity.

In Medina v. City of New York, 87 A.D.3d 907, 909 (N.Y. App. Div. 1st Dep't 2011), the First Department found that § 240 did not apply to a plaintiff who was injured when a piece of subway rail suddenly sprang upward and then fell on his leg.  The Court found the injury not to be "gravity" related despite the fact that the injury occurred while the rail was falling *back* to the ground.  In Quishpi v. 80 WEA Owner, LLC, 145 A.D.3d 521, 522 (N.Y. App. Div. 1st Dep't 2016), the First Department relied on Medina to find that the statute does not apply to objects that are propelled upwards by kinetic energy.  The Court reaffirmed that the propulsion of an object upward by kinetic energy does not constitute "the application of the force of gravity to an object or person," as required under § 240(1).  In Joseph v. City of

---

[2] Cannizzo defined a fulcrum as the support or point of rest on which a lever turns in a moving body.

New York, 143 A.D.3d 489, 490 (N.Y. App. Div. 2nd Dep't 2016), the Second Department cited Medina in finding that the intent behind the statute is to protect workers against harm where "the direct consequence of the application of the force of gravity to an object" is involved.

The only dispute here is the characterization of the activity that led to plaintiff's injury, and whether the duct became airborne.  Summary judgment is appropriate where, as here, the parties offer different characterizations of the facts, but do not seriously dispute the relevant sequence of events.  Section 240 does not apply to objects that are thrown or propelled upward by kinetic energy.  "The relevant inquiry is . . . whether the harm flows directly from the application of the force of gravity to the object."  Runner, 13 N.Y.3d at 604-05.

Construing the facts in the light most favorable to plaintiff and drawing favorable inferences from plaintiff's version of the facts—that the duct did in fact lose contact with the tailgate and was in the air and that a lull should have been provided and was not—the duct simply fell as a result of the crew first propelling it upwards.  The incident and injury did not occur due to the direct consequence of the application of the force of gravity.  The duct was thrown, despite any attempt by plaintiff to characterize it as being hoisted, as no mechanical apparatus was used.  Further, there was not the "elevation related hazard" envisioned by the statute as the duct was thrown from below plaintiff.  This is not a case that entails the hazards presented by "a difference between the elevation level where the worker is positioned and the higher level of the materials or load being hoisted or secured."  Rocovich, 78 N.Y.2d at 514.

There can be but one reasonable conclusion as to the verdict which is that the activity and resulting injury is not the type covered by § 240. Review of the record reveals insufficient evidence for a rational trier of fact to find in plaintiff's favor and thus summary judgment is appropriate. Accordingly, defendant's motion for summary judgment will be granted, plaintiff's cross-motion for summary judgment on liability will be denied, and the New York Labor Law § 240 claim will be dismissed.

## IV. CONCLUSION

Therefore, it is

ORDERED that

1. Defendant's motion for summary judgment is GRANTED in its entirety;

2. Plaintiff's cross-motion for summary judgment on liability is DENIED; and

3. Plaintiff's complaint is DISMISSED in its entirety.

The Clerk is directed to enter judgment accordingly and close the file.

IT IS SO ORDERED.

_____
United States District Judge

Dated:  March 22, 2018
        Utica, New York.